IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REAL-TIME REPORTERS, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 5348 |
| | ) | |
| SONNTAG REPORTING SERVICES, LTD., | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Real-Time Reporters, P.C.'s (RTR) motion for a preliminary injunction. For the reasons stated below, the motion is denied.

## BACKGROUND

RTR contends that since 1996 it has been in the business of providing stenographic transcription, court reporting, and other litigation support services in and around Chicago under the name and mark "Real-Time Reporters." (Compl. Par. 5). RTR contends that it holds the exclusive right to use that name and mark. In March 2013, Defendant Sonntag Reporting Service, Ltd. (Sonntag) began offering similar services under the name "Chicago-area Realtime Reporters, Ltd." and

1

operating a website under the domain name "www.chicago-realtime.com." (Compl. Par. 15). RTR claims that it has experienced instances of customer confusion between RTR and Sonntag. For example, RTR contends that it has received payments, invoices, and phone calls which were intended for Sonntag. RTR brought the instant action and includes in its complaint a trademark and unfair infringement claim brought under the Lanham Act, 15 U.S.C. § 1051 *et seq.* (Count I), a common law trademark infringement claim (Count II), a common law unfair competition claim (Count III), an Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act), 815 ILCS 505/1, *et seq.* claim (Count IV), an Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* claim (Count V), and a tortious interference with prospective economic advantage claim (Count VI). Although RTR never sought a temporary injunction in this case, RTR now seeks a preliminary injunction.

## DISCUSSION

I. Initial Requirements

A party seeking a preliminary injunction must initially establish: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d

1079, 1086 (7th Cir. 2008). If the moving party fails to satisfy any of the above elements, the court must deny the motion for a preliminary injunction. *Id.*

A. Irreparable Harm and Inadequate Remedy at Law

RTR contends that if a preliminary injunction is not entered, RTR will suffer irreparable harm and have no adequate remedy at law due to its loss of a head start in the marketplace. RTR contends that it will suffer harm to its good will that cannot be repaired after this case is concluded. However, RTR's own inaction belies its claims that it is facing irreparable harm that requires immediate injunctive relief. As Sonntag correctly points out, the record reflects that RTR became aware of Sonntag's alleged conduct in April 2013. (Ans. Mot. 6). Yet RTR did not bring the instant action until July 26, 2013. Even after bringing the instant action RTR chose not to pursue a temporary restraining order, and did not bring the instant motion until almost a month after filing the instant action. RTR has not offered sufficient explanation for its inaction thus far in this case regarding its supposed need for instant injunctive relief. This case is not overly complex and will proceed in an efficient manner. RTR has not shown that its position will be irretrievably altered in the limited time that it will take to conclude this action.

RTR also argues that "[a] trademark infringement plaintiff seeking injunctive relief is presumed to have been irreparably harmed and to lack an adequate legal remedy." (Mem. 10-11). However, it is unresolved whether in light of the Supreme Court's ruling in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), which

3

was a patent case, that a presumption can remain for similar types of cases such as trademark infringement cases. *See, e.g., Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012)(holding "that *eBay* governs a motion for a preliminary injunction in a copyright case"); *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 999 (9th Cir. 2011)(same); *Peoples Federal Sav. Bank v. People's United Bank*, 672 F.3d 1, 9 (1st Cir. 2012)(indicating that it is unresolved whether *eBay* applies to a trademark case). The court also notes that even if the presumption were applied in this case, the ultimate ruling as to the instant motion would not be altered after consideration of all the pertinent factors. RTR has not shown that absent the entry of a preliminary injunction, it will suffer irreparable harm and would lack a legal remedy at law.

### B. Likelihood of Success on the Merits

RTR contends that it has a likelihood of success on the merits in this case. RTR's claims all related to Sonntag's operating name and website, which RTR asserts confuse consumers. Based on an initial review of the record at this juncture, the mark and name that RTR claims to own appears to be a generic term. The Seventh Circuit has indicated that a "generic term" is one that is commonly used as the name of a kind of good. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986)(stating that "[u]nlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is a species"). RTR argues that "'Real-Time Reporters' does not tell the

4

buyer the precise nature of the services plaintiff offers, but identifies the source of the services." (Reply1). However, Sonntag has produced evidence showing that the term "realtime" is a generic term used in the court reporter field. For example, Sonntag contends that court reporters can obtain certifications as a Certified Realtime Reporter and a Realtime Systems Administrator. (Ans. Mot. 2). Thus, the term "realtime" appears to be a generic mark.

The Seventh Circuit has explained that "[t]o allow a firm to use as a trademark a generic word, or a descriptive word still understood by the consuming public to describe, would make it difficult for competitors to market their own brands of the same product." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986). Based on the limited record at this juncture, RTR has failed to show that it has a protected mark, or to show that Sonntag engaged in any fraudulent conduct, unfair competition, or other tortious conduct. Although RTR asserts that there has been some confusion among customers of RTR and Sonntag, it is not entirely unforeseeable that some customers might become confused with competitors that are offering the same products. RTR has failed to show at this juncture, however, that any actual customer confusion exists that is sufficient to create liability by Sonntag. Nor has RTR shown at this juncture that the generic mark it claims is a descriptive mark or has acquired a secondary meaning. *See H-D Michigan, Inc. v. Top Quality Service, Inc.*, 496 F.3d 755, 759-60 (7th Cir. 2007)(stating that "[g]eneric and descriptive marks ordinarily cannot function as trademarks, but a descriptive mark may warrant protection if it has acquired secondary meaning" and that "[a]

descriptive mark acquires secondary meaning if the product name comes "to be uniquely associated with the original seller"). Therefore, RTR has failed to show a reasonable likelihood of success on the merits in this case at this initial stage of the proceedings and based on the limited record presented to the court at this juncture.

II. Balancing Phase

If the moving party satisfies all of the initial requirements for a preliminary injunction, the court must "proceed[] to the balancing phase of the analysis." *Girl Scouts*, 549 F.3d at 1086. During the balancing phase, the court should balance: (1) the potential harm to the parties, (2) the likelihood of success on the merits, and (3) the public interest. *Id.* The court should employ "a sliding scale approach: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (internal quotations omitted)(quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)).

A. Potential Harm to the Parties and Likelihood of Success

Even if RTR had met the initial requirements for a preliminary injunction, RTR has failed to satisfy that it can succeed on the balancing factor. RTR contends that it will be severely harmed if it does not obtain a preliminary injunction. However, again, RTR's claims are not consistent with its unhurried approach in seeking injunctive relief in this case. In addition, RTR has failed at this juncture to

show that it can base its claims on what appears to be a generic mark and RTR has not set forth sufficient evidence relating to any misconduct that would render Sonntag liable to RTR. On the other hand, Sonntag has shown that it will face extreme hardships in operating its business if this court were to enjoin Sonntag from using its name during the pendency of the instant action. Sonntag will need to start from scratch in the marketplace with a new name and lose all of the goodwill and customer recognition that it has built thus far in the field and face the difficult task of competing with established businesses such as RTR. The balancing of harms thus clearly favors Sonntag.

### B. Public Interest

RTR argues that the public interest favors granting the preliminary injunction. It is in the public interest to protect trademark rights to encourage parties to utilize trademarks for commerce. However, in this case, where the likelihood of success on the merits factor favors the defendant, the public interest does not support the entry of a preliminary injunction. To enter a preliminary injunction would effectively shut down Sonntag's operation and allow RTR to utilize the preliminary injunction to shut down a competitor seeking to compete with RTR in the marketplace. Whether RTR prevails or loses on the merits in this case, RTR would have been able to force a competitor out of business. Public policy supports ensuring that there is free competition in the marketplace. The Seventh Circuit offered as an example an instance where a party is "forbidden to describe a Chevrolet as a 'car' or an

'automobile' because Ford or Chrysler or Volvo had trademarked these generic words, or an after-shave lotion as 'bracing' because the maker of one brand of aftershave lotion had trademarked this descriptive word." *Blau Plumbing, Inc.*, 781 F.2d at 609. The Seventh Circuit explained that to allow one party to hold exclusive rights over such generic terms would make it extremely difficult for that party's competitors to operate and market their products. *Id.* Similarly, in this case, based on the record at this juncture, it appears that RTR is seeking the exclusive right to control a generic term that its competitors would need to use in advertising in order to effectively compete in the marketplace. RTR could not, for example, claim the exclusive right to the use of the term "Reporter." Such a right would make it near impossible for other court reporter companies to operate and advertise their services. Based upon the above, the motion for a preliminary injunction is denied.

## CONCLUSION

Based on the foregoing analysis, RTR's motion for a preliminary injunction is denied.

						_____
						Samuel Der-Yeghiayan
						United States District Court Judge

Dated: October 29, 2013